IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCB DERIVATIVES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> ANDREW BRONSON and KIERAN BRACKEN, <br><br> Defendants. | CASE NO. 22-CV-02742 <br><br> JUDGE JOHN ROBERT BLAKEY |

**ANDREW BRONSON'S AND KIERAN BRACKEN'S FIRST
AMENDED COUNTERCLAIM AGAINST SCB DERIVATIVES, LLC**

Defendants Andrew Bronson ("Bronson") and Kieran Bracken ("Bracken") (collectively, "Counterclaimants"), pursuant to Rule 13 of the Federal Rules of Civil Procedure, hereby assert the following Counterclaim against Plaintiff SCB Derivatives, LLC ("SCB"):

**PARTIES**

1. Bracken and Bronson are individuals and former employees of Plaintiff, domiciled in Illinois. Neither was an officer or director of Plaintiff.

2. SCB is a Delaware limited liability company in the commodities business.

**JURISDICTION AND VENUE**

3. This Court has diversity jurisdiction over this Counterclaim pursuant to 28 U.S.C. §1332, as the Counterclaim is between citizens of different states and in which citizens of a foreign state are additional parties, and the amount in controversy in this dispute exceeds $75,000.

4. Because this Counterclaim against Plaintiff is part of the same case or controversy as Plaintiff's claims against Defendants currently pending before this Court, this Court has supplemental jurisdiction over the Counterclaim pursuant to 28 U.S.C. §1367(a).

5. Venue in the United States District Court for the Northern District of Illinois is proper because a substantial part of the events or omissions giving rise to the claims alleged in Plaintiff's First Amended Complaint occurred in this judicial district, rendering venue proper pursuant to 28 U.S.C. §§ 1391(b)(1).

## FACTUAL ALLEGATIONS

6. In January 2015, Bronson began working as an operations analyst at SCB. In April or May 2016, he began working as a broker on SCB's US Ethanol brokerage desk.

7. In September 2017, Bracken began working as a broker on SCB's US Ethanol brokerage desk.

8. At the beginning of their respective periods of employment as brokers with SCB, Bronson and Bracken each executed written employment agreements ("Original Agreements").

9. In the Original Agreements, Counterclaimants were compensated by SCB based on a salary and bonus.

10. In the Original Agreements, the bonus was to be paid based on a specific bonus formula: 45% of all gross commissions in excess of a threshold, with the threshold computed as 2.25 times salary.

11. During the pendency of the Original Agreements, SCB paid the Counterclaimants their respective bonuses based on the bonus formula set forth in those Original Agreements.

12. Upon information and belief, the uniform practice in the industry from 2015–2022 was for brokers to be paid bonuses based on formulas.

13. In the Fall of 2019, there were at least 15 brokers working for SCB across North America.

14. Beginning on or about the Fall of 2019, SCB sought to have all of its brokers in North America execute purported new employment agreements—with a critical change as to how bonuses were to be paid to brokers. In particular, SCB wanted the brokers to execute these purported new employment agreements so bonuses could be determined and paid at the "sole discretion of [SCB]."

15. Section 3.1(b) of the purported new employment agreements states: "The Broker shall also be eligible for a bonus and/or bonuses, the award and amount of which shall in all events be determined in the sole discretion of the Company."

16. Counterclaimants had several meetings and discussions with SCB management where they refused to sign these purported new employment agreements. Counterclaimants were concerned that SCB would use the "sole discretion" language in Section 3.1(b) as a basis to deprive them of bonuses or reduce the amount of bonuses.

17. In order to convince the Counterclaimants to sign the purported new employment agreements, their respective managers unequivocally promised that if they signed the purported new employment agreements, SCB would pay bonuses to the Counterclaimants going forward based on the same bonus formula used in the Original Agreements (the "Promise").

18. The Promise was stated to Counterclaimants on the following occasions:

   a. In or about the end of the third quarter or fourth quarter 2019, Kevin McGeeny made the Promise to Bracken orally, during multiple in-person meetings in SCB's Chicago office.

   b. In or about late December 2019 or January 2020, Joachim Emanuelsson made the Promise to Bronson orally, on a phone call.

      c. In or about late December 2019 or January 2020, Bronson received an email, on his work email account, from Joachim Emanuelsson in which Joachim Emanuelsson made the Promise.

19. On information and belief, SCB made the Promise to at least 13 other brokers. Counterclaimants' belief is based, in part, on conversations they had with colleagues. During these conversations, colleagues identified brokers other than Counterclaimants to whom the Promise had been made and/or described the Promise as part of SCB's plan to convince brokers to sign the purported new employment agreements.

20. Counterclaimants understood the "sole discretion" language in Section 3.1(b) of the purported new employment agreements to mean that SCB would pay bonuses to the Counterclaimants going forward based on the same bonus formula used in the Original Agreements, consistent with the Promise. This understanding was based on the discussions prior to signing the agreements, wherein Counterclaimants expressed significant concern about SCB denying or reducing their bonuses and SCB reassured them by making the Promise.

21. SCB management used hard pressure tactics in an attempt to force the Counterclaimants to sign the purported new agreements.

22. Based on their communications with their respective managers, Counterclaimants believed that if they did not sign the purported new employment agreements, they would be fired.

23. Based on SCB's hard pressure tactics, and in reliance on the Promise, Bracken signed the purported new employment agreement on or about January 6, 2020.

24. Based on SCB's hard pressure tactics, and in reliance on the Promise, Bronson signed the purported new employment agreement on or about January 25, 2020.

25. After Bracken signed the purported new employment agreement, SCB failed to pay him the full amount of bonuses he earned based on the same bonus formula used in the Original Agreements.

26. After Bronson signed the purported new employment agreement, SCB failed to pay him the full amount of bonuses he earned based on the same bonus formula used in the Original Agreements.

27. Thus, SCB broke its Promise to pay bonuses to the Counterclaimants *going forward* based on the same bonus formula used in the Original Agreements.

28. The Promise was a false representation rendering the purported new employment agreements invalid and unenforceable. At the time it was made, SCB never intended to keep the Promise. This is apparent from SCB's use of the Promise as a hard pressure tactic to convince brokers to sign the purported new employment agreements. Moreover, on information and belief, SCB's rollout of the purported new employment agreements was part of a scheme to unjustly limit brokers' compensation. Counterclaimants' belief is based, in part, on conversations they had with colleagues after signing the purported new agreements, where colleagues characterized SCB's intentions and goals.

29. As of the filing of this lawsuit, Counterclaimants are owed unpaid bonuses.

## COUNT I
**(Fraudulent Misrepresentation – Promissory Fraud – Bracken)**

30. Bracken re-alleges and incorporates Paragraphs 1–29 as though fully set forth herein.

31. Bracken's manager(s), acting on behalf of SCB, made an unequivocal Promise that if he signed the purported new employment agreement, SCB would pay bonuses to him going forward based on the same bonus formula used in the Original Agreements.

32. At the time it was made, SCB never intended to keep the Promise.

33. The Promise was a false representation.

34. SCB knew the Promise was false.

35. SCB made the Promise with the intent to induce Bracken's reliance—specifically, to induce Bracken to sign the purported new employment agreement.

36. SCB made the same Promise to Bronson and, on information and belief, at least 13 other brokers.

37. The Promise was part of a scheme by SCB to convince brokers to sign purported new employment agreements, then take advantage of them by limiting their compensation.

38. Bracken relied on the Promise, believing it to be true, when he decided to sign the purported new employment agreement.

39. Bracken's reliance on the Promise was reasonable.

40. As a result of his reliance on the Promise, Bracken has suffered damages, including earned yet unpaid bonuses.

41. Bracken's unpaid bonuses exceed $75,000.

## COUNT II
### (Fraudulent Misrepresentation – Promissory Fraud – Bronson)

42. Bronson re-alleges and incorporates Paragraphs 1–29 as though fully set forth herein.

43. Bronson's manager(s), acting on behalf of SCB, made an unequivocal Promise that if he signed the purported new employment agreement, SCB would pay bonuses to him going forward based on the same bonus formula used in the Original Agreements.

44. At the time it was made, SCB never intended to keep the Promise.

45. The Promise was a false representation.

46. SCB knew the Promise was false.

47. SCB made the Promise with the intent to induce Bronson's reliance—specifically, to induce Bronson to sign the purported new employment agreement.

48. SCB made the same Promise to Bracken and, on information and belief, at least 13 other brokers.

49. The Promise was part of a scheme by SCB to convince brokers to sign purported new employment agreements, then take advantage of them by limiting their compensation.

50. Bronson relied on the Promise, believing it to be true, when he decided to sign the purported new employment agreement.

51. Bronson's reliance on the Promise was reasonable.

52. As a result of his reliance on the Promise, Bronson has suffered damages, including earned yet unpaid bonuses.

53. Bronson's unpaid bonuses exceed $30,000.

## COUNT III
**(Promissory Estoppel – Bracken)**

54. Bracken re-alleges and incorporates Paragraphs 1–29 as though fully set forth herein.

55. The purported new employment agreement between SCB and Bracken is invalid and unenforceable because it was induced by fraud and/or signed under duress.

56. Bracken alleges an affirmative claim for promissory estoppel.

57. SCB made an unambiguous Promise to Bracken that if he signed the purported new employment agreement, SCB would pay bonuses to him going forward based on the same bonus formula used in the Original Agreements.

58. Bracken relied on SCB's Promise by, among other things, signing the new, invalid purported employment agreement on or about January 6, 2020, continuing to execute trades on the US Ethanol market as a broker for SCB with the expectation of being compensated based on the same bonus formula used in the Original Agreements, and not resigning from SCB.

59. Such reliance by Bracken was expected and foreseeable by SCB.

60. Bracken relied on SCB's Promise to his detriment.

61. Bracken has earned bonuses, but has not been paid such bonuses, in an amount exceeding $75,000.

62. Section 2 of the Illinois Interest Act provides that creditors shall receive interest of five per centum per annum for all monies after they become due on money withheld by an unreasonable and vexatious delay of payment.

63. By failing to timely pay Bracken the bonuses due and owed to him, SCB has vexatiously and unreasonably delayed, failed and refused to pay Bracken, therefore entitling Bracken to interest under the Illinois Interest Act.

## COUNT IV
### (Promissory Estoppel – Bronson)

64. Bronson re-alleges and incorporates Paragraphs 1–29 as though fully set forth herein.

65. The purported new employment agreement between SCB and Bronson is invalid and unenforceable because it was induced by fraud and/or signed under duress.

66. Bronson alleges an affirmative claim for promissory estoppel.

67. SCB made an unambiguous Promise to Bronson that if he signed the purported new employment agreement, SCB would pay bonuses to him going forward based on the same bonus formula used in the Original Agreements.

68. Bronson relied on SCB's Promise by, among other things, signing the new, invalid purported employment agreement on or about January 25, 2020, continuing to execute trades on the US Ethanol market as a broker of SCB with the expectation of being compensated based on the same bonus formula used in the Original Agreements, and not resigning from SCB.

69. Such reliance by Bronson was expected and foreseeable by SCB.

70. Bronson relied on SCB's Promise to his detriment.

71. Bronson has earned bonuses, but has not been paid such bonuses, in an amount exceeding $30,000.

72. Section 2 of the Illinois Interest Act provides that creditors shall receive interest of five per centum per annum for all monies after they become due on money withheld by an unreasonable and vexatious delay of payment.

73. By failing to timely pay Bronson the bonuses due and owed to him, SCB has vexatiously and unreasonably delayed, failed and refused to pay Bronson, therefore entitling Bronson to interest under the Illinois Interest Act.

## COUNT V
### (Quantum Meruit – Bracken)

74. Bracken re-alleges and incorporates Paragraphs 1–29 as though fully set forth herein.

75. From September 2017 to December 2021, Bracken worked as a broker on SCB's US Ethanol brokerage desk.

76. During his period of employment, Bracken was compensated by SCB based on a salary and bonus.

77. During his period of employment, Bracken performed the work expected of him as a broker on SCB's US Ethanol brokerage desk, to the benefit of SCB, and Bracken earned bonuses entitling him to payment.

78. The broker services provided by Bracken were accepted by SCB.

79. The broker services provided by Bracken were never objected to or rejected by SCB.

80. The broker services provided by Bracken were not gratuitous and Bracken expected payment from SCB in the form of bonuses for the services he provided.

81. There was no valid and enforceable contract accurately prescribing the bonus formula used by SCB for the services provided by Bracken.

82. The purported new employment agreement between SCB and Bracken is invalid and unenforceable because it was induced by fraud and/or signed under duress.

83. Based on trades executed by Bracken during his employment with SCB, there remain bonuses earned but unpaid by SCB to Bracken.

84. As a direct and proximate result of the foregoing facts herein alleged, Bracken has suffered losses exceeding $75,000.

85. Section 2 of the Illinois Interest Act provides that creditors shall receive interest of five per centum per annum for all monies after they become due on money withheld by an unreasonable and vexatious delay of payment.

86. By failing to timely pay Bracken the bonuses due and owed to him, SCB has vexatiously and unreasonably delayed, failed and refused to pay Bracken, therefore entitling Bracken to interest under the Illinois Interest Act.

## COUNT VI
### (Quantum Meruit – Bronson)

87. Bronson re-alleges and incorporates Paragraphs 1–29 as though fully set forth herein.

88. From April or May 2016 to December 2021, Bronson worked as a broker on SCB's US Ethanol brokerage desk.

89. During his period of employment, Bronson was compensated by SCB based on a salary and bonus.

90. During his period of employment, Bronson performed the work expected of him as a broker on SCB's US Ethanol brokerage desk, to the benefit of SCB, and Bronson earned bonuses entitling him to payment.

91. The broker services provided by Bronson were accepted by SCB.

92. The broker services provided by Bronson were never objected to or rejected by SCB.

93. The broker services provided by Bronson were not gratuitous and Bronson expected payment from SCB in the form of bonuses for the services he provided.

94. There was no valid and enforceable contract accurately prescribing the bonus formula used by SCB for the services provided by Bronson.

95. The purported new employment agreement between SCB and Bronson is invalid and unenforceable because it was induced by fraud and/or signed under duress.

96. Based on trades executed by Bronson during his employment with SCB, there remain bonuses earned but unpaid by SCB to Bronson.

97. As a direct and proximate result of the foregoing facts herein alleged, Bronson has suffered losses exceeding $30,000.

98. Section 2 of the Illinois Interest Act provides that creditors shall receive interest of five per centum per annum for all monies after they become due on money withheld by an unreasonable and vexatious delay of payment.

99. By failing to timely pay Bronson the bonuses due and owed to him, SCB has vexatiously and unreasonably delayed, failed and refused to pay Bronson, therefore entitling Bronson to interest under the Illinois Interest Act.

**PRAYER FOR RELIEF**

1. For these reasons, Counterclaimants ask for judgment against SCB for the following:

    a. An award in an amount no less than $30,000 as the principal amount due to Counterclaimant Bronson;

    b. An award in an amount no less than $75,000 as the principal amount due to Counterclaimant Bracken;

    c. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

    d. Fees, costs, and expenses for bringing this Counterclaim, including reasonable attorneys' fees; and

    e. Such other and further relief that the Court deems just and proper under the circumstances.

Dated: December 6, 2023                    Respectfully submitted,

                                              ANDREW BRONSON and KIERAN BRACKEN

By: /s/ *Carl M. Johnson*
Ronald S. Betman [ARDC #6193103]
Carl M. Johnson [ARDC # 6317661]
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: 312.517.9552
Facsimile: 312.767.9192
rbetman@beneschlaw.com
cmjohnson@beneschlaw.com

*Attorneys for Defendants/Counterclaimants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on the below via the Court's ECF Filing System this 6th day of December 2023.

>Kenneth Gage
>Michael Whalen
>Paul Hastings LLP
>71 South Wacker Drive, Forty-Fifth Floor
>Chicago, IL 60606
>kennethgage@paulhastings.com
>michaelcwhalen@paulhastings.com

>/s/ *Carl M. Johnson*