IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCB DERIVATIVES, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CASE NO. 22-CV-02742 |
| ANDREW BRONSON and KIERAN BRACKEN, | ) ) JUDGE JOHN ROBERT BLAKEY ) ) |
| Defendants. | ) ) |

**DEFENDANTS' RESPONSE TO SCB'S MOTION
TO DISMISS THEIR AMENDED COUNTERCLAIM**

Defendants Andrew Bronson and Kieran Bracken ("Defendants"), respond to Plaintiff SCB Derivatives, LLC's ("SCB") Motion to Dismiss Their Amended Counterclaim (which is supported by SCB's Memorandum of Law (the "Motion")) as follows:

**ARGUMENT**

**I.      Defendants' fraudulent misrepresentation claims are sufficient.**

   **A.      Defendants allege their fraud claims with particularity.**

The factual allegations supporting Defendants' fraudulent misrepresentation claims meet the heightened pleading standard under Rule 9(b). To state a claim, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). A party must plead the "who, what, where, when, and how" of the misrepresentation. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569t (7th Cir. 2012) (citation omitted); *Petrakopoulou v. DHR Intern., Inc.*, 660 F. Supp. 2d 935, 937-938 (N.D. Ill. 2009). In other words, the pleading must identify the representation's substance, speaker, time, place, and mode of communication. *See id.* Defendants have done so.

1

Defendants specifically allege the "what" of the fraud. They identify the misrepresentation as follows: "their respective managers unequivocally promised that if they signed the purported new employment agreements, SCB would pay bonuses to the Counterclaimants going forward based on the same bonus formula used in the Original Agreements (the 'Promise')." (First Amended Counterclaim ("CC") ¶ 17.) The Promise is the misrepresentation.

Defendants then refer back to the "what," i.e. the Promise, and allege the "who, where, when, and how" of the fraud. Describing the circumstances of the misrepresentation to Bracken, Defendants allege as follows:

> [when?] In or about the end of the third quarter or fourth quarter 2019, [who?] Kevin McGeeny made [what?] the Promise to Bracken [how?] orally, during multiple in-person meetings [where?] in SCB's Chicago office. (CC ¶ 18.a).

As to Bronson, Defendants allege:

> [when?] In or about late December 2019 or January 2020, [who?] Joachim Emanuelsson made [what?] the Promise to Bronson [how?] orally, [where?] on a phone call. (CC ¶ 18.b).

and

> [when] In or about late December 2019 or January 2020, Bronson received [how?] an email, [where?] on his work email account, from Joachim Emanuelsson in which [who?] Joachim Emanuelsson made [what?] the Promise. (CC ¶ 18.c).

These allegations are sufficiently particular. Defendants have satisfied Rule 9(b). *See Wigod*, 673 F.3d at 569 (reversing the district court's dismissal of a fraudulent misrepresentation claim); *Petrakopoulou*, 660 F. Supp.2d at 937-938 (N.D. Ill. 2009) (denying motion to dismiss fraudulent misrepresentation claim).

In an attempt to undermine Defendants' claims, SCB asserts the allegations are not specific enough, but does not cite a single case that supports its position. For example, SCB cites *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.* and *U.S. ex rel. Lusby v. Rolls-Royce Corp.* to suggest Defendants' allegations "fundamentally fail." (Motion at 4.) *Rolls-Roye*,

2

however, supports *Defendants*' claims, as the court held the plaintiff's allegations were sufficiently particular. 570 F.3d 849, 855 (7th Cir. 2009). *Pirelli* supports Defendants too. There the court cautioned, "courts and litigants often erroneously take an overly rigid view of the [Rule 9(b)] formulation" and the "requisite information," or the "who, what, when, where, and how . . . . may vary on the facts of a given case." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust, v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). Moreover, the substantive allegations in *Pirelli* were based on information and belief, speculation, and secondhand information, including allegations from an unrelated lawsuit. *Id.* at 442.

Here, by contrast, Defendants allege the circumstances of the fraud based on personal knowledge. And to the best of their personal knowledge, they allege the "who, what, where, when, and how" of the misrepresentations. SCB argues "Defendants do not describe the content of the misrepresentations—just that they purportedly occurred." (Motion at 4.) This ignores Defendants' allegations. In paragraph 17 of the Amended Counterclaim, Defendants expressly state the contents of SCB's misrepresentation, and define it as the Promise. SCB again ignores Defendants' allegations (at CC ¶¶ 18.a–c, quoted above) in asserting "Defendants also do not explain *any details* about the meetings or calls during which the representations allegedly occurred" (Motion at 4, emphasis added). This assertion is both incorrect and disingenuous. Indeed, earlier in the Motion (at 3–4), SCB *quotes* the detailed factual allegations.

Moreover, although SCB acknowledges Defendants' allegations as to timeframe, SCB contends, with no legal support, that the timeframe is not precise enough. It appears SCB is taking an "overly rigid view" of what Rule 9(b) requires.

Indeed, several of the cases SCB relies on illustrate, by way of contrast, the sufficiency of Defendants' allegations. In *Reynolds v. Skyline Real Est. Ltd.*, for example, the plaintiffs alleged

3

they relied on misrepresentations in deciding to make investments. No. 22 C 1241, 2023 WL 4899827, at *2–3 (N.D. Ill. Aug. 1, 2023). The fraud claims failed, however, because there were no timing allegations at all. *Id.* at *8. The plaintiffs did not even allege the misrepresentations preceded the investments, which undermined reliance. *Id.* The plaintiffs also failed to identify which individuals made the representations. *Id.* Here, by contrast, Defendants identify specific instances when specific individuals made the misrepresentation, and allege the deception led them to sign the purported employment agreements. (CC ¶¶ 18, 23, 24.)

In *Chi. Police Sergeants Ass'n v. City of Chicago*, the fraud claims were dismissed because the plaintiffs "baldly allege[d]" that the defendant made "numerous materially false statements . . . but fail[ed] to identify any specific false statement" or identify any action taken in reliance on the statements. No. 08-cv-4214, 2011 WL 2637203, at *9 (N.D. Ill. July 6, 2011). Here, Defendants *do* identify the false statement (CC ¶ 17, alleging the Promise) and *do* identify action taken in reliance (CC ¶¶ 23, 24.)

In alleging fraud here, Defendants do not, as SCB suggests, "merely reiterate the prima facie elements . . . [and] fail to add any facts or details to bolster their complaint" (Motion at 5). Instead, Defendants allege with particularity the "who, what, where, when, and how" of the fraudulent representations. The claims are sufficiently pled.

**B.     Purported employment agreements do not preclude Defendants' fraud claims.**

SCB argues the purported employment agreements preclude Defendants' fraud claims because the terms of those agreements contradict the misrepresentation (i.e. the Promise). Not so.

Indeed, there is no contradiction between the terms of the purported employment agreements and the Promise. The purported new employment agreements SCB presented to Defendants stated the amount of Defendants' bonuses would be determined "in the sole discretion of the Company." (CC ¶ 15.) Defendants initially refused to sign, and "were concerned that SCB

4

would use the 'sole discretion' language in Section 3.1(b) as a basis to deprive them of bonuses or reduce the amount of bonuses." (*Id.* ¶ 16.) To alleviate this concern, and to convince Defendants to sign, their "respective managers unequivocally promised that if they signed the purported new employment agreements, SCB would pay bonuses to the Counterclaimants going forward based on the same bonus formula used in the Original Agreements (the 'Promise')." (*Id.* ¶ 17.) Defendants were thus reassured that SCB, in exercising its discretion, would pay bonuses based on the same bonus formula used in the Original Agreements. Theres is no contradiction because the term "discretion" does not preclude SCB from using the formula. The language is compatible, that is, consistent, with the Promise.

This is not a situation "where the contract 'explicitly' contradicts precontractual promises." (Motion at 65–67, citing *Gelco Corp. v. Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *5 (N.D. Ill. Dec. 26, 2002).) Nor is it a situation where Defendants entered into a transaction "with their eyes closed." (Motion at 5, citing *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574-75 (7th Cir. 2001).)

SCB's reliance on *Cozzi* is misplaced. In *Cozzi,* the contract, a photocopy lease, specified that the plaintiff was obligated to pay minimum monthly payments. 250 F.3d at 574. By contrast, the alleged misrepresentation stated plaintiff would only be responsible for the copies it actually made, i.e. no minimum payment. *Id.* This is a direct contradiction. Accordingly, *Cozzi* does not undermine Defendants' claims, because here the purported contract term is *consistent* with the misrepresentation.

5

## II. The purported employment agreements do not bar Defendants' quasi-contract claims.

Defendants' quasi-contract claims are not barred by the purported employment agreements because they allege those agreements are invalid and unenforceable. (*See* CC ¶¶ 28, 55, 65, 82, 95.)

A party may recover under quasi-contract claims "if [the] contract is held to be invalid due to fraud or for some other reason." *Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 913 (N.D. Ill. 2006). This rule applies to both promissory estoppel and quantum meruit claims. Indeed, an agreement can only bar a promissory estoppel claim "where there is no disagreement that there was a valid contract governing the parties' rights". *Rossi Distribs., Inc. v. Lavazza Premium Coffees Corp.*, No. 01 C 9271, 2002 WL 31207324, at *3 (N.D. Ill. Oct. 2, 2002). It is "premature to dismiss [a] counterclaim for promissory estoppel [when] the validity of the [a]greement [ ] has been contested." *Arrow Elecs., Inc. v. Deco Lighting, Inc.*, No. 18-cv-01100-RM-KLM, 2019 WL 5095739, at *10 (D. Colo. Aug. 9, 2019). Similarly, when a party "has plausibly alleged that the contract was procured through fraudulent inducement, the contract is unenforceable and does not serve as a bar to recovery pursuant to quantum meruit." *Sys. One Holdings LLC v. Campbell*, No. B: 18-CV-54, 2018 WL 4290459, at *6 (S.D. Tex. Aug. 21, 2018). "[F]raudulent inducement is sufficient to invalidate [a] contract." *Kolson v. Vembu*, 869 F. Supp. 1315, 1321 (N.D. Ill. 1994).

A party can even bring a breach of contract claim and allege quasi-contract theories in the alternative. *See e.g. Acoustical Surfaces, Inc. v. Vertetek Corp.*, No. 13-CV-4837, 2014 WL 1379864, at *5 (N.D. Ill. Apr. 8, 2014) ("Although [plaintiff] will not be able to recover under its quasi-contract claims if there was in fact a contract governing its relationship with [defendant], [plaintiff] may proceed with such alternative theories at this [pleading] stage.")

6

Here, Defendants unambiguously allege "[t]he Promise was a false representation rendering the purported new employment agreements invalid and unenforceable." (CC ¶ 28.) Defendants also allege the factual circumstances of the fraud, with particularity. (*See* CC ¶¶ 14–27.) Defendants allege "SCB management used hard pressure tactics in an attempt to force [Defendants] to sign the purported new agreements" (*Id.* ¶ 21) and assert duress. (*Id.* ¶¶ 55, 65, 82, 95.) Accordingly, because Defendants dispute the validity of the agreements, Defendants' promissory estoppel and quantum meruit claims are proper.

The absence of a valid, enforceable contract here renders the cases SCB relies on inapposite. *See Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1003 (1st Dist. 1982) (acknowledging there *was* a valid, enforceable contract); *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) (same); *Prentice v. UDC Advisory Servs., Inc.*, 648 N.E.2d 146, 151 (1st Dist. 1995) (same); *Wagner Excello Foods, Inc. v. Fearn Int'l, Inc.*, 601 N.E.2d 956, 963-64 (1st Dist. 1992) (same); *Archon Constr. Co., Inc. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 46 (same).

At the motion to dismiss stage, the Court must "accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citation omitted). Accordingly, because Defendants unambiguously allege the purported employment agreements are invalid and unenforceable, Defendants' quasi-contract claims are not barred. *See Reis Robotics*, 462 F. Supp. 2d at 912-13; *Rossi Distribs.*, 2002 WL 31207324, at *3.

**III.    The statute of frauds does not bar Defendants' promissory estoppel claims.**

SCB argues the statute of frauds bars Defendants' promissory estoppel claims because Defendants remained employed by SCB for more than one year after signing the purported new employment agreements. (Motion at 9–10.) This argument fails, however, because regardless of the ultimate length of their tenure, Defendants' employment was at-will.

The statute of frauds requires a written contract for "any agreement that is not to be performed within the space of one year from the making thereof." 740 Ill. Comp. Stat. Ann. 80/1. Although, for statute of frauds purposes, promissory estoppel is akin to an oral contract (*see Dickens v. Quincy Coll. Corp.*, 615 N.E.2d 381, 386 (4th Dist. 1993), oral contracts for at will employment are outside the statute of frauds. *See Krieger v. Adler, Kaplan & Begy*, No. 94 C 7809, 1997 WL 323827, at *9 (N.D. Ill. June 11, 1997).

In Illinois, contracts of indefinite duration, such as the purported new employment agreements, are presumed to be "at will." *See McInerney v. Charter Golf, Inc.*, 689 N.E.2d 1347, 1349(1997). Accordingly, because the agreements at issue here are for Defendants' at-will employment, the statute of frauds does not bar Defendants' claims.

## CONCLUSION

For the foregoing reasons, the Court should deny SCB's Motion to Dismiss Defendants' First Amended Counterclaim.

Dated: January 22, 2024          Respectfully submitted,

ANDREW BRONSON AND KIERAN BRACKEN

By: */s/ Carl Johnson*

    Ronald S. Betman [ARDC #6193103]
    Carl M. Johnson [ARDC # 6317661]
    Benesch, Friedlander, Coplan & Aronoff LLP
    71 South Wacker Drive, Suite 1600
    Chicago, Illinois 60606-4637
    Telephone: 312.517.9552
    Facsimile: 312.767.9192
    rbetman@beneschlaw.com
    cmjohnson@beneschlaw.com

*Attorneys for Defendants Andrew Bronson and Kieran Bracken*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record via the Court's ECF Filing System this 22nd day of January 2024.

/s/ *Carl M. Johnson*