UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCB Derivatives, LLC, | |
| Plaintiff, | Case No. 1:22-CV-2742 |
| v. | Judge John Robert Blakey |
| Andrew Bronson and Kieran Bracken | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This case began as an employment dispute between Plaintiff and Counterclaim-Defendant SCB Derivatives ("SCB") and Defendants and Counterclaim-Plaintiffs Andrew Bronson ("Bronson") and Kieran Bracken ("Bracken"). [20]. This Court previously denied Defendants' motion to dismiss various claims brought against them by Plaintiff. [33]. Currently before the Court is SCB's motion to dismiss Bronson and Bracken's counterclaims for failure to state a claim upon which relief can be granted. [48]. For the reasons explained below, the Court denies the motion as to all claims.

I. Background[1]

Defendants Bronson and Bracken began working at SCB in January 2015 and September 2017, respectively, Bronson as an operations analyst and Bracken as a broker on Plaintiff's US Ethanol brokerage desk. [46] ¶¶ 6–7. In April or May 2016,

---

[1] For purposes of deciding the motion to dismiss, the Court takes as true the allegations presented in Defendants' amended counterclaim, [46].

Bronson too became a broker on the US Ethanol brokerage desk. *Id.* ¶ 6. At the start of their employment as brokers with Plaintiff, both Defendants executed written employment agreements ("Original Agreements") under which SCB compensated them on a salary and bonus basis. *Id.* ¶¶ 8–9. The Original Agreements required SCB to pay bonuses based upon a specific formula, namely, 45% of all gross commissions greater than a threshold, computed as 2.25 times salary. *Id.* ¶ 10. Plaintiff paid both Defendants their respective bonuses based upon this bonus formula during the pendency of their Original Agreements. *Id.* ¶ 11.

In the fall of 2019, SCB required its brokers to execute new employment agreements, which changed how bonuses were to be paid. *Id.* ¶ 14. Specifically, Section 3.1(b) of the purported new employment agreements states that brokers "shall also be eligible for a bonus and/or bonuses, the award and amount of which shall in all events be determined in the sole discretion of the Company." *Id.* ¶ 15. Concerned that Plaintiff would use this new language as a basis to deprive them of or reduce the amount of their bonuses, Defendants refused during several meetings and discussions with SCB management to sign the new agreements. *Id.* ¶ 16.

To convince Bronson and Bracken to sign, their respective managers promised them that if they did so, SCB would pay them bonuses going forward based upon the same bonus formula used in the Original Agreements (the "Promise"). *Id.* ¶ 17. Kevin McGeeny made the Promise to Bracken orally, during in-person meetings in SCB's Chicago office, at the end of the third or fourth quarter 2019, and Joachim Emanuelsson made the Promise to Bronson orally, on a phone call, in late December

2019 or January 2020 and then followed up with an email around the same time. *Id.* ¶ 18.

Based upon discussions prior to signing the agreements, during which Defendants expressed their concerns about the denial or reduction of their bonuses, and SCB reassured them by making the Promise, Bronson and Bracken understood the "sole discretion" language in Section 3.1(b) of the purported new employment agreements to mean SCB would pay their bonuses going forward using the same formula used in the Original Agreements. *Id.* ¶ 20. From communications with their respective managers, Defendants believed they would be fired if they did not sign the new agreements. *Id.* ¶ 22.

Based upon SCB's pressure tactics, and in reliance upon the Promise, Bronson and Bracken signed the new agreements on January 6, 2020, and January 25, 2020, respectively. *Id.* ¶¶ 23–24. After Defendants did so, however, SCB failed to pay them their full bonuses as calculated using the original formula. *Id.* ¶¶ 25–26. Bronson and Bracken resigned, and SCB sued them for breach of their fiduciary duties and their obligations under the employment agreements; thereafter, Bronson and Bracken countersued SCB. SCB now moves to dismiss their claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the

3

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The legal standard for a motion to dismiss a complaint applies equally to a motion to dismiss a counterclaim. *See Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Thus, when considering a motion to dismiss a counterclaim, a court must accept all well-pleaded allegations within the counterclaim as true, draw all reasonable inferences in favor of the counterclaim-plaintiffs, and view the facts in the counterclaim in the light most favorable to the non-moving parties. *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).

### III. Analysis

Bronson and Bracken claim fraudulent misrepresentation (Counts 1 and 2); promissory estoppel (Counts 3 and 4); and quantum meruit (Counts 5 and 6). [46]. SCB moves to dismiss all claims, and the Court considers each in turn below.

#### A. Fraudulent Misrepresentation (Counts I and II)

Fraudulent misrepresentation requires: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the

4

statement; and (5) damage to the plaintiff resulting from such reliance." *Thompson v. Am. Airlines Grp., Inc.*, 128 F. Supp. 3d 1047, 1050 (N.D. Ill. 2015). SCB argues that Bronson and Bracken's claims fail because: (1) Defendants fail to plead with the particularity required under Federal Rule of Civil Procedure Rule 9(b) the circumstances of the purported fraudulent statements upon which they claim to have relied; and (2) Defendants' employment contracts with SCB preclude such claims. [49] at 3–4.

1. **Rule 9(b)**

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In cases involving "misrepresentation" frauds under this standard, the party must state the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the party. *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990); *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). Put differently, the party "must plead the 'who, what, when, and where' of the alleged fraud" – the "first paragraph of any newspaper story." *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Requiring this level of particularity serves the concurrent goals of "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party." *Vicom*, 20 F.3d at 777. Thus, while the precise level of particularity will naturally

vary depending upon the specific facts of the case, *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted), "cryptic statements" suggesting fraud will not suffice; nor will mere references to "plans and schemes." *Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir. 1989) (quoting *Hayduk v. Lanna,* 775 F.2d 441, 444 (1st Cir. 1985)).

SCB argues that Defendants' counterclaim merely reiterates the "prima facie elements" of a fraud claim, "fundamentally" failing to "provide the requisite "who, what, when, where, and how" of the fraud. [49] at 4–5. Not so. Both Bronson and Bracken state that their respective managers, acting on behalf of SCB, unequivocally promised that if they signed the purported new employment agreements, SCB would pay them bonuses going forward based upon the same bonus formula used in the Original Agreements. [46] ¶ 17. They then go on to allege three specific occasions on which SCB representatives made this misrepresentation, in each case clearly and specifically alleging the "who, what, where, when, and how." *Id.* ¶ 18.

Plaintiff takes aim at three supposed omissions, arguing that Defendants fail to: (1) describe the content of the misrepresentations (but rather just that they allegedly occurred); (2) provide details about the meetings or calls during which the misrepresentations allegedly occurred; or (3) provide in sufficient detail the specific times at which the misrepresentations allegedly occurred. [49] at 4–5. But Defendants repeatedly describe the content of the misrepresentations (the "what") as the Promise: that if Bronson and Bracken signed the new employment agreements,

6

SCB would pay bonuses going forward based on the same bonus formula used in the Original Agreements. [46] ¶¶ 17–18.

Turning to the second and third points, Plaintiff suggests that Defendants ought to have provided further (unspecified) details about the meetings or calls during which the representations allegedly occurred, including more specific timing. But the authorities upon which Plaintiff relies suggest no such thing. To the contrary, the court in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, while noting the ordinary need for a plaintiff to describe the "who, what, when, where, and how" of the fraud, cautioned against adopting "an overly rigid view of the formulation"—precisely what Plaintiff appears to urge here. 631 F.3d 436, 441–42 (7th Cir. 2011).

The remaining cases that Plaintiff cites are equally unhelpful, merely demonstrating by way of contrast, as Defendants point out, the sufficiency of their allegations. [61] at 3. In *Reynolds v. Skyline Real Estate Ltd.*, for example, the plaintiffs left unclear whether the defendants' alleged misrepresentations even preceded the plaintiffs' investments, thus failing entirely to show reliance. No. 22 C 1241, 2023 WL 4899827, *8 (N.D. Ill. Aug. 1, 2023). Defendants Bronson and Bracken, by contrast, provide a clear timeline for their allegations: "Beginning on or about the Fall of 2019," SCB sought to have its North American brokers execute new employment agreements, [46] ¶ 14; multiple (named) individuals made the Promise to Defendants on occasions at "the end of the third quarter or fourth quarter 2019," in "late December 2019 or January 2020," *id.* ¶ 18; and Bronson and Bracken, in

7

reliance on this Promise, signed the new agreements on January 6 and 25, 2020, respectively. *Id.* ¶¶ 23–24. Despite Plaintiff's making much of Defendants' reference to multi-month periods, [49] at 5, their allegations suffice in establishing the requisite "when." *See, e.g., Hefferman v. Bass*, 467 F.3d 596, 601–02 (7th Cir. 2006) (holding that allegations a misrepresentation took place in "late August or early September" 2003 satisfied 9(b)'s requirements); *Greer v. Advanced Equities, Inc.*, 683 F. Supp. 2d 761, 772 (N.D. Ill. 2010) (holding that allegations misrepresentations were made in the "fall of 1999" or "November 1999" were specific enough).

The other cases Plaintiff cites to suggest Defendants pled with insufficient specificity are similarly unpersuasive, as the plaintiffs in each fundamentally failed to provide key information that Bronson and Bracken allege. In *Chicago Police Sergeants Ass'n v. City of Chicago*, for example, the plaintiffs merely alleged that the defendant had made "numerous materially false statements" without identifying any such statement. No. 08-cv-4214, 2011 WL 2637203, at *9 (N.D. Ill. July 6, 2011). In *Jepson, Inc. v. Makita Corp.*, likewise, the plaintiffs alleged the "general nature" of the misrepresentations—that the defendant had contacted customers "to induce them not to purchase" their products—without providing any information on the actual content of the misrepresentations themselves. 34 F.3d 1321, 1328 (7th Cir. 1994). So too in *Baldwin v. Star Scientific, Inc.*, where the plaintiff alleged that he had viewed investor statements but failed to specify which ones or their contents. No. 14 C 588, 2016 WL 397290, at *7 (N.D. Ill. Feb. 2, 2016). In contrast, Bronson and Bracken

8

have alleged the who, what, where, when, and how of the alleged fraud, and the Court accordingly denies SCB's motion to dismiss Counts 1 and 2 on this basis.

### 2. The Impact of the Written Employment Agreements

Plaintiff argues in the alternative that Defendants' fraudulent misrepresentation claims fail because their employment contracts preclude them. [49] at 5. SCB specifically argues that the explicit bonus terms in Defendants' purported new employment agreements put them on notice not to rely on SCB's pre-signing representations because the written contract terms, which Bronson and Bracken had ample opportunity to review, directly conflict with those representations. *Id.* at 6. Plaintiff claims that the written bonus terms, combined with a merger clause in the written agreements, left Defendants with no reasonable basis for relying on the alleged misrepresentations. *Id.*

Reliance is typically a question of fact; but the Court may decide it as a matter of law when, considering all the facts a complainant knew or could have learned "through the exercise of ordinary prudence," "no trier of fact could find that it was reasonable to rely on the alleged statements, or when only one conclusion can be drawn." *Cozzi*, 250 F.3d at 574. Thus, a party who had an opportunity to read a contract and by doing so could have discovered the fraud at issue based upon its "clear and unambiguous language" cannot proceed with its claim. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1207 (7th Cir. 1998). But that is not the case here.

9

As an initial matter, Plaintiff makes much of the presence of a merger clause in the employment contracts—and Defendants' failure to address it—but to little end. While the Illinois Supreme Court has not yet addressed the issue of whether integration clauses themselves suffice to preclude fraud claims, the Seventh Circuit has predicted that were it do so, it would follow the majority rule that "an integration clause does not bar a fraud claim." *Kim v. H Guys, LLC*, No. 1:20-CV-03588, 2022 WL 888871, at \*4 (N.D. Ill. Mar. 26, 2022) (quoting *Vigortone AG Prods., Inc. v. PM AG Prods., Inc.*, 316 F.3d 641, 644 (7th Cir. 2002)). Under this majority rule, a merger clause only limits the evidence available to parties in the case of a dispute over the meaning of a contract; it has "nothing to do with" whether the contract was induced by fraud. *Vigortone*, 316 F.3d at 644; *see also Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1546 (7th Cir. 1990) (stating that the parol evidence rule does not block claims of fraud in the inducement); *Budget Rent A Car Corp. v. Genesys Software Sys., Inc.*, No. 96 C 0944, 1997 WL 201549, at \*3 (N.D. Ill. Apr. 17, 1997) (holding that the presence of an integration clause alone does not make parol evidence inadmissible to prove a fraud antecedent to a contract).

What remains at issue here, then, is whether Defendants' written employment agreements "explicitly" contradict the alleged pre-contractual misrepresentations by SCB. *Gelco Corp. v. Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at \*5 (N.D. Ill. Dec. 26, 2002). Again, the authority to which Plaintiff turns demonstrates by way of contrast that they do not. In *Cozzi*, the defendant allegedly misrepresented to the plaintiff that, in entering a photocopier leasing agreement, it would only be

10

responsible for payment for the copies it actually made. 250 F.3d at 573. The lease agreement, however, explicitly contradicted this representation by stating that the plaintiff was responsible for the minimum number of copies identified in the lease. *Id.* at 575. It also explicitly stated that Cozzi "had not relied on any oral representations contrary to the written terms of the agreement." *Id.*

Here, by contrast, the written bonus term in Defendants' contracts merely states that brokers will be eligible for bonuses, "the award and amount of which shall in all events be determined in the sole discretion" of SCB. [46] ¶ 15. Unlike in *Cozzi*, the alleged pre-contractual representation here does not explicitly contradict the written term because Defendants allegedly believed SCB—in exercising its sole discretion—would pay them bonuses based upon the same formula used in their Original Agreements. *Id.* ¶ 20. Absent such a contradiction, the Court cannot find at this stage that Defendants as a matter of law acted unreasonably in relying upon SCB's alleged pre-contractual statements. The Court thus denies Plaintiff's motion to dismiss Counts 1 and 2 on this basis as well.

### B. Promissory Estoppel and Quantum Meruit (Counts III–VI)

To state a claim for promissory estoppel in Illinois, a party must allege: (1) a promise unambiguous in terms; (2) with reliance thereon by the promisee; (3) with such reliance being expected and foreseeable by the promisor; and (4) with the promisee in fact relying upon the promise, to his injury. *A–Abart Elec. Supply v. Emerson Elec. Co.,* 956 F.2d 1399, 1404 (7th Cir. 1992) (citations omitted). To state a claim of quantum meruit, the complainant must allege that: (1) the complainant

11

performed services; (2) the respondent received the benefit of those services; and (3) the respondent's retention of that benefit without compensating the complainant would be unjust. *Midcoast Aviation, Inc. v. General Elec. Credit Corp.,* 907 F.2d 732, 737 (7th Cir. 1990).

Plaintiff argues that Defendants' quasi-contract claims of promissory estoppel and quantum meruit fail because they are precluded by the written employment agreements in place between Plaintiff and Defendants. [49] at 6. Additionally, Plaintiff argues that Defendants' promissory estoppel claims are barred by the statute of frauds because Defendants' employment with SCB exceeded the statute's one-year limit. *Id.* at 9.

### 1. The Impact of the Written Employment Agreements

Under Illinois law, a party may not, as a general rule, pursue a quasi-contract claim where an enforceable express contract exists. *Barry Mogul & Assocs., Inc. v. Terrestris Dev. Co.*, 643 N.E.2d 245, 251 (Ill. App. Ct. 1994). Thus, once a court finds that a valid contract exists, "quasi-contractual relief," including claims of promissory estoppel and quantum meruit, "is no longer available." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003). Here, however, Defendants specifically allege that the only written contracts at issue, the purported new employment agreements, were "*invalid* and *unenforceable*" based upon SCB's false representation (the Promise). [46] ¶ 28 (emphasis added). Equitable remedies such as promissory estoppel and quantum meruit apply precisely "to situations involving implied contracts, *invalid* contracts, or claims that fall outside contracts." *Plestsov v.*

12

*GTS Transportation Corp.*, No. 20 CV 1847, 2020 WL 6059854, at *3 (N.D. Ill. Oct. 14, 2020) (emphasis added) (citations omitted); *cf. Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 325 (7th Cir. 2021) (holding that no equitable remedy was available where plaintiffs failed to allege express contracts were invalid).

In arguing otherwise, Plaintiff relies heavily upon *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 601 N.E.2d 956 (Ill. App. Ct. 1992). While it is true that quasi-contract claims are not meant "to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract," *id.* at 236–37 (quoting *Gen. Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990)), Defendants do not attempt to use them as such in this case. In *Wagner*, the court held that plaintiff, who had incurred start-up costs, could not state a cause of action for lost profits under a breach of contract claim while at the same time maintaining a cause of action based on promissory estoppel; however, even the *Wagner* court recognized that a party may plead these claims in the alternative. *Id.* at 266. In other words, a party may plead breach of contract or, if it is found no contract was formed, plead for quasi-contract relief in the alternative. *Cromeens*, 349 F.3d at 397. Bronson and Bracken do not even attempt alternative pleading; instead, they claim the written employment agreements were invalid and unenforceable, and, as such, the Court cannot say at this stage that they can prove no set of facts entitling them to relief under quasi-contractual theories. The Court thus declines to dismiss Counts 3 through 6 based upon Defendants' written employment agreements.

13

### 2. Statute of Frauds

Plaintiff argues in the alternative that Defendants' promissory estoppel claims (Counts 3 and 4) remain barred by the statute of frauds. The Illinois Statute of Frauds applies to any agreement "that is not to be performed within the space of one year from the making thereof." 740 Ill. Comp. Stat. Ann. 80/1. As Plaintiff states, [49] at 9, this rule applies to promises claimed to be enforceable through promissory estoppel, as in this case. *Fischer v. First Chi. Cap. Mkts., Inc.*, 195 F.3d 279, 284 (7th Cir. 1999) (citations omitted); *Dickens v. Quincy Coll. Corp.*, 615 N.E.2d 381, 386 (Ill. App. Ct.1993). Thus, just as the statute of frauds prevents enforcement of an oral contract that cannot be performed within one year, so too does it block parties from using promissory estoppel to imply the existence of a contract that cannot be performed within one year. *Dickens*, 615 N.E.2d at 386.

The equation changes, however, when an agreement governs an at-will employment relationship. As outlined in *Lamaster v. Chicago & Northeast Illinois District Council of Carpenters Apprentice & Trainee Program*, Illinois courts have interpreted the Statute of Frauds to mean that "any agreement that is *capable* of being performed within a year, whether or not that contingency is likely," is not covered by the statute. 766 F. Supp. 1497, 1507 (N.D. Ill. 1991). For example, an at-will employment relationship, which has no specified period of performance, may be concluded by any number of occurrences within one year, including the death or resignation of the employee, and the statute of frauds thus does not apply. *Lamaster*, 766 F. Supp. at 1508; *Krieger v. Adler, Kaplan & Begy*, No. 94 C 7809, 1997 WL

14

323827, at *9 (N.D. Ill. June 11, 1997), *on reconsideration in part,* No. 94 C 7809, 1997 WL 349988 (N.D. Ill. June 20, 1997) (citations omitted).

Plaintiff argues that the Statute of Frauds exception for at will employment does not apply because the alleged representation in this case involved payment of a bonus following a full year of employment, not a standalone at-will employment agreement. [64] at 8. But Bronson and Bracken base their claims for promissory estoppel on the Promise by SCB that, if they signed their new employment agreements, SCB would pay bonuses to them "*going forward*" based upon the same bonus formula used in their Original Agreements. [46] ¶¶ 57, 67 (emphasis added). The general rule under Illinois law dictates that an employment relationship without a fixed duration may be terminated at will by either party. *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 563 (7th Cir. 1991). Under this presumption, then, Defendants' employment relationship with SCB was at will, and the alleged Promise, which governed that relationship, could have been performed in under a year, had either Defendants or Plaintiff chosen to end the relationship.

Plaintiff asserts that the statute of frauds applies in this case because SCB in fact employed Bronson and Bracken for a period longer than a year. [49] at 9. But since the statute's restrictions have been interpreted as applying only to those agreements that are "impossible" to perform in one year, the fact that Defendants in reality worked longer than that remains irrelevant. *Balstad v. Solem Mach. Co.*, 168 N.E.2d 732, 734 (Ill. App. Ct. 1960) (finding irrelevant that performance under at-

15

will contract well exceeded a year). Accordingly, the Court denies Plaintiff's motion to dismiss Counts 3 and 4 on this basis.

### IV. Conclusion

For the reasons explained above, the Court denies Plaintiff's motion to dismiss [48]. Plaintiff shall answer the amended counterclaim [46] by December 16, 2024. All other set dates and deadline stand.

Dated: November 25, 2024

Entered:

_____
John Robert Blakey
United States District Judge